UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT ROBERTS,

    Plaintiff,

-v-

FORD MOTOR COMPANY,
a Delaware corporation,

    Defendant.

Case No.
Hon.

Charlotte Croson (P56589)
Adam Taub (P78334)
Croson Taub & Michaels PLLC
455 E. Eisenhower, Ste 75
Ann Arbor Mi, 48108-3335
(734) 519-0873
ccroson@ctmlawyers.com
ataub@ctmlawyers.com

# COMPLAINT AND JURY DEMAND

Plaintiff, Scott Roberts, by and through his attorneys, Croson Taub & Michaels, PLLC, hereby alleges as follows:

## PARTIES, VENUE, AND JURISDICTION

1. Plaintiff Scott Roberts is an individual currently residing in Washtenaw County, within the Eastern District of Michigan.

2. Defendant Ford Motor Company is a Delaware Corporation with its principal place of business in Wayne County, Michigan, within this judicial district.

3. Jurisdiction is proper in this Court under 42 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff's claims involve violations of federal law, Title VII, 42 U.S.C. 2000e, *et seq*.

4. Supplemental jurisdiction over Plaintiff's state law claims is proper under 28 U.S.C. § 1367, as they arise from the same case and controversy.

5. Venue is proper in this Court under 28 U.S.C. § 1391 as this is the judicial district in which Defendant's principal place of business is located and in which a substantial part of the events or omissions giving rise to the claim occurred.

## STATEMENT OF FACTS

6. Plaintiff began his employment with Defendant in or about 1998 as a shipping and receiving clerk. Plaintiff's final position with Defendant was as an Inspector on the CAL Line in Department 85.

7. Plaintiff is male and is homosexual and Defendant was aware of Plaintiff's sex and sexual orientation at all times relevant to this complaint.

8. During his employment with Ford, Plaintiff was subjected to homophobic slurs and harassment, including, but not limited to: being told "hey sweetheart", "come here buttercup", and "I'm afraid to bend over near you" and

graffiti in public areas saying "Scott Roberts is a faggot" and "Scott Roberts swallows".

9. Plaintiff complained to Ford about the harassment, but Ford never effectively remediated.

10. In or about January 2018, Plaintiff was subjected to homophobic threats and slurs by a Ford Team Leader, Brian Scott. Such threats and slurs include, but are not limited to:

    a. "Tell that fucking faggot that I'm going to fuck him up the ass until it hurts";

    b. "I hate gay people";

    c. "I'm going to wait for him in the parking lot and beat his ass";

    d. "He better watch his back";

    e. "Tell that faggot he better watch his vehicle".

11. In addition, Brian Scott made threats of retaliation toward Plaintiff, including, but not limited to:

    a. "I'm going to come back to days and become his team leader again and make his life a living hell";

    b. That when he becomes Mr. Roberts's Team Leader, Mr. Roberts "will be in a world of hurt".

12. A Team Leader is a leadership position appointed by Ford. A Team Leader exercises control and authority over team members' day-to-day working conditions.

13. Plaintiff repeatedly reported the threats and slurs to Defendant stating, *inter alia*, that:

   a. Brian Scott had stated to another employee: "tell your faggot friend Scott to watch his back and to keep an eye on his car";

   b. Plaintiff no longer wished to "live in fear on a daily basis";

   c. Brian Scott had been violent with another co-worker, that he tried to back into her car;

   d. Plaintiff was currently in fear for his life;

   e. Plaintiff's supervisor had refused to address Brian Scott's misconduct;

   f. Brian Scott was a "hot head"; and

   g. "God only knows what [Brian Scott] will do when he gets wind of this".

14. Plaintiff's written witness statements were counter-signed by Ford's Labor Relations Representative.

15. Defendant initially took no action to remediate or investigate Brian Scott's slurs and threats against Plaintiff.

16. Upon information and belief, Defendant finally investigated Plaintiff's complaints and complaints from other employees regarding Brian Scott once a witness came forward.

17. Defendant eventually suspended Brian Scott for thirty days.

18. Upon information and belief, Defendant did not discipline Brian Scott for his homophobic slurs and threats to Plaintiff.

19. Plaintiff repeatedly objected to Defendant's failure to remediate Brian Scott's conduct toward Plaintiff, but Defendant took no further action.

20. Plaintiff retained an attorney who contacted Defendant and again reported Brian Scott's homophobic and retaliatory threats and slurs against Plaintiff; that "management has taken no steps to protect [Plaintiff] or provide him with a sense of security"; and that management had prohibited Plaintiff from taking measures to protect himself from physical harm. Defendant took no action.

21. Brian Scott was returned to work at the end of his suspension.

22. In or about September 2020, Plaintiff was told by his supervisor that Brian Scott was going to be assigned by Defendant to Plaintiff's Department as Plaintiff's Team Leader.

23. Plaintiff repeatedly objected to Brian Scott being placed in a position of authority and control over him, given Brian Scott's previous homophobic slurs, harassment, threats, and threats of retaliation.

24. Defendant disregarded Plaintiff's reports and concerns.

25. On November 30, 2020, Brian Scott reported to work in Plaintiff's Department as Plaintiff's Team Leader.

26. Because of Brian Scott's past conduct and threats, Plaintiff reasonably believed that he was in danger from Brian Scott.

27. Plaintiff left the job site on November 30, 2020. He left a message for Defendant's Head of Labor Relations, Anthony Miller, referencing that Brian Scott had been assigned as Plaintiff's Team Leader and that, because Plaintiff "no longer feel[s] safe," he has "left the building".

28. Defendant never contacted Plaintiff about his concerns and complaints about Brian Scott being assigned to his Department as his Team Leader.

29. Plaintiff's last day of work for Defendant was November 30, 2020.

30. Any reasonable person in Plaintiff's position would have left work under these circumstances.

31. Defendant's actions were intentionally calculated to cause Plaintiff to resign his employment.

32. Plaintiff has been constructively discharged from his employment with Defendant.

33. On or about May 12, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging discrimination on the basis of his sex and that such discrimination was a continuing action.

34. On or about May 24, 2021, Plaintiff received his Dismissal and Notice of Rights from the EEOC. His complaint has been timely filed.

# CAUSES OF ACTION

## COUNT I
## ELLIOTT-LARSEN CIVIL RIGHTS ACT SEX DISCRIMINATION
## MCL § 37.2202(1)(a)

35. Plaintiff incorporates by reference each preceding Paragraph as though fully restated herein.

36. At all relevant times, Defendant Ford Motor Company was an employer, and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act. MCL § 37.2101.

37. Plaintiff is a member of a protected group because of his sex, male.

38. Plaintiff was subjected to adverse employment action when he was subjected to harassment, threats, assignment of Brian Scott as his Team Leader, and a hostile working environment because of his sex, as set forth herein.

39. Plaintiff was subjected to an adverse employment action when he was constructively discharged.

40. Defendant's actions as outlined above were motivated by Plaintiff's sex.

41. But for Plaintiff's sex, he would not have been subjected to sexual harassment, threats of harm, threats of sexual assault, and assignment of Brian Scott as Plaintiff's Team Leader, and would not have been constructively discharged.

42. Defendant's actions constituted unlawful discrimination on the basis of

7

sex in violation of MCL § 37.2202(1)(a).

43. As a direct and proximate result of Defendant's violation of the ELCRA, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

44. As a direct and proximate result of Defendant's violation of the ELCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT II
## ELLIOTT-LARSEN CIVIL RIGHTS ACT RETALIATION
## § MCL 37.2701(a)

45. Plaintiff incorporates by reference each preceding Paragraph as though fully restated herein.

46. At all relevant times, Defendant Ford Motor Company was an employer, and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act. MCL § 37.2101.

47. Plaintiff engaged in protected activity under ELCRA by complaining about and opposing the sexual harassment and sex discrimination at Defendant Ford

Motor Company.

48. Plaintiff was subjected to adverse employment action when he was subjected to harassment, threats, assignment of Brian Scott as his Team Leader, and a hostile working environment because of his sex, as set forth herein.

49. Plaintiff was subjected to an adverse employment action when he was constructively discharged.

50. But for Plaintiff's protected activity, he would not have been subjected to sexual harassment, threats of harm, threats of sexual assault, Defendant's continued failure to remediate, assignment of Brian Scott as Plaintiff's Team Leader, and constructive discharge.

51. Defendant's actions were motivated by unlawful retaliation against Plaintiff because of his protected activity in violation of MCL § 37.2701(a).

52. As a direct and proximate result of Defendant's violation of the ELCRA, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

53. As a direct and proximate result of Defendant's violation of the ELCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits and will so suffer in the future; he has been required to employ

the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT III
## **TITLE VII SEX DISCRIMINATION, 42 U.S.C. § 2000e**

54. Plaintiff incorporates by reference each preceding Paragraph as though fully restated herein.

55. At all relevant times, Defendant Ford Motor Company was an employer, and Plaintiff was an employee covered by and within the meaning of Title VII.

56. Prohibited sex discrimination under Title VII includes discrimination because of sexual orientation.

57. Plaintiff is a member of a protected group because of his sex, male, and because of his sexual orientation, homosexual.

58. Plaintiff was subjected to adverse employment actions when he was subjected to harassment, threats, and a hostile working environment because of his sex, as set forth herein.

59. Plaintiff was subjected to adverse employment action when he was subjected to harassment, threats, and a hostile working environment because of his sexual orientation, as set forth herein.

60. Plaintiff was subjected to an adverse employment action when he was constructively discharged.

61. Defendant's actions as outlined above were motivated by Plaintiff's sex.

62. Defendant's actions as outlined above were motivated by Plaintiff's sexual orientation.

63. But for Plaintiff's sex, he would not have been subjected to sexual harassment, threats of harm, threats of sexual assault, and would not have been constructively discharged.

64. But for Plaintiff's sexual orientation, he would not have been subjected to sexual harassment, threats of harm, threats of sexual assault, and would not have been constructively discharged.

65. Defendant's actions constituted unlawful discrimination on the basis of sex in violation of Title VII, 42 U.S.C. § 2000e.

66. Defendant's actions constituted unlawful discrimination on the basis of sexual orientation in violation of Title VII, 42 U.S.C. § 2000e.

67. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

68. As a direct and proximate result of Defendant's violation of Title VII,

Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT IV
## TITLE VII SEXUAL HARASSMENT and/or HARASSMENT BECAUSE OF SEX, 42 U.S.C. § 2000e

69. Plaintiff incorporates here all previously stated allegations

70. Defendant Ford Motor Company is an employer within the meaning of Title VII.

71. At all relevant times, Defendant Ford Motor Company was an employer, and Plaintiff was an employee covered by and within the meaning of Title VII.

72. Prohibited sex discrimination under Title VII includes sexual harassment, including, but not limited to, unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct or communication of a sexual nature.

73. Prohibited sex discrimination under Title VII includes discrimination because of sexual orientation.

74. During Plaintiff's employment, employees and/or agents of Defendant Ford Motor Company subjected Plaintiff to unwelcome verbal or physical conduct or communication of a sexual nature.

75. Prohibited sex discrimination under Title VII also includes harassment that is not sexual in nature but is because of Plaintiff's sex.

76. Prohibited sex discrimination under Title VII also includes harassment that is not sexual in nature but is because of Plaintiff's sexual orientation.

77. During Plaintiff's employment, Defendant and/or employees and/or agents of Defendant Ford Motor Company subjected Plaintiff to harassment and a hostile working environment that was not sexual in nature, but was because of Plaintiff's sex, as set forth herein.

78. During Plaintiff's employment, Defendant and/or employees and/or agents of Defendant Ford Motor Company subjected Plaintiff to harassment and a hostile working environment that was not sexual in nature, but was because of Plaintiff's sexual orientation, as set forth herein.

79. The unwelcome conduct and remarks and assignment of Brian Scott as Plaintiff's Team Leader created a hostile work environment based on sex.

80. The unwelcome conduct and remarks and assignment of Brian Scott as Plaintiff's Team Leader created a hostile work environment based on sexual orientation.

81. The unwelcome conduct had the purpose or effect of interfering with Plaintiff's employment.

82. This conduct was objectively and subjectively offensive, such that a

reasonable person would find it hostile or abusive.

83. Plaintiff found this conduct both objectively and subjectively offensive.

84. Defendant Ford Motor Company had both actual and constructive notice that its employees had created a hostile and offensive work environment for Plaintiff.

85. Defendant Ford Motor Company and its agents, knew of, condoned, failed to address, and/or participated in the hostile work environment created by its employees and agents.

86. This conduct was open and obvious and Ford Motor Company took no inadequate remedial actions.

87. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

88. As a direct and proximate result of Defendant's violation of the Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff prays that this Honorable Court grant the following remedies:

    a. Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of Title VII and/or the ELCRA;

    b. Award Plaintiff all lost wages and benefits, past and future, to which he is entitled;

    c. Award Plaintiff emotional distress damages;

    d. Award Plaintiff appropriate equitable relief;

    e. Award Plaintiff all appropriate compensatory damages;

    f. Award Plaintiff exemplary damages;

    g. Award Plaintiff punitive damages; and

    h. Award Plaintiff reasonable attorney fees, costs and interest; and Award such other relief as this Court deems just and proper.

Respectfully submitted,

Croson Taub & Michaels, PLLC

/s/ *Charlotte Croson*
Charlotte Croson (P56589)
Attorney for Plaintiff
Croson Taub & Michaels, PLLC
455 E. Eisenhower, Ste 75
Ann Arbor, MI 48108-3335
ccroson@ctmlawyers.com

Dated: August 21, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT ROBERTS,

    Plaintiff,

-v-

FORD MOTOR COMPANY,
a Delaware corporation,

    Defendant.

Case No.
Hon.

---

Charlotte Croson (P56589)
Adam Taub (P78334)
Croson Taub & Michaels PLLC
455 E. Eisenhower, Ste 75
Ann Arbor Mi, 48108-3335
(734) 519-0873
ccroson@ctmlawyers.com
ataub@ctmlawyers.com

---

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ *Charlotte Croson*
Charlotte Croson (P56589)
Attorney for Plaintiff
Croson Taub & Michaels, PLLC
455 E. Eisenhower, Ste 75
Ann Arbor, MI 48108-3335
ccroson@ctmlawyers.com

Dated: August 21, 2021